UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

RUFUS L. SPEARMAN,

         Plaintiff,                Case No. 2:20-cv-185

v.                                        Honorable Paul L. Maloney

GRETCHEN WHITMER et al.,

         Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan.. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF)

in Baraga, Baraga County, Michigan, Woodland Correctional Facility (WCC) in Whitmore Lake, Livingston County, Michigan, Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan and the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.

Plaintiff sues Governor Gretchen Whitmer, MDOC Director Heidi E. Washington, and Mental Health Program Director Designee Jennifer Faha.  Plaintiff also sues AMF Social Workers Anne Lanala and Unknown Harju, URF Psychiatrists Aleksandra Wilanowski and Esmaeil Emami, URF Social Worker Cory Masuga, URF Psychologist Kyle D. Wood, and Social Worker Melody Chapin.

Plaintiff alleges that "his way of life or lifestyle is Nuwaubian."  (ECF No. 1, PageID.13.)  In describing his beliefs, Plaintiff states that "it is what many in the mainstream society – including myself at times – refer to as a religion."  *Id.*  Plaintiff states that Nuwaubia incorporates ancient Egyptian concepts, belief in extraterrestrial life and a supreme being, Native American beliefs, and Islamic traditions.  Nuwaubians may not use drugs.

Plaintiff states that on May 30, 2016, while being housed at AMF, he wrote a letter of complaint to the Civil Service Commission requesting an investigation into a suspected conspiracy involving the MDOC, prison employees, and inmates.  On June 14, 2016, Defendant Lanala perfected a "mental health services referral," which misrepresented important facts and decreased Plaintiff's Global Assessment of Functioning (GAF) score from 70 to 15.  Plaintiff states that he was transferred to the Crisis Stabilization Unit at WCC.  Based on reports by Defendants Lanala and Harju, Plaintiff was involuntarily admitted into the Corrections Mental Health Program (CMHP) and was given 20 mg of Haldol every day without his consent.

Within days of being placed on Haldol, Plaintiff began to display side effects such as muscle fatigue, stiff muscles, migraine headaches, decreased energy, blurry vision, confusion, and the inability to concentrate. Within a month or two, Plaintiff developed akathisia, trembling and shaking, nausea, nose bleeds, and throat or stomach bleeds. Plaintiff was placed on Cogentin to treat the akathisia.

Plaintiff was transferred to URF on September 28, 2017. Plaintiff's involuntary treatment order was set to expire on October 11, 2017, but Defendants Wilanowski, Masuga, Emami, Wood, Chapin, and Faha continued the order over Plaintiff's objections. Plaintiff was apparently transferred to LRF at some point because on May 22, 2018, CMHP staff at the LRF discovered that the facts used to institute involuntary treatment were false and immediately discontinued Plaintiff's medication and discharged him from the CMHP program.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Defendants Whitmer and Washington

Plaintiff fails to make specific factual allegations against Defendants Whitmer and Washington, but appears to name them solely because of their positions in state government and as the head of the MDOC. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene*

4

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Whitmer or Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## IV.   Initial mental health placement and involuntary administration of Haldol

The Court notes that Plaintiff's claims against Defendants Lanala and Harju regarding his initial mental health referral and placement on Haldol are barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981

Michigan law provides that if the plaintiff is insane at the time the claim accrues, the plaintiff shall have one year after the disability is removed to file pursue a civil action even if the statute of limitations has run. *Bradley v. Macomb County*, 370 F. Supp. 2d 607, 610 (E.D. Mich. May 17, 2005). The court noted:

> Michigan law defines "insane" as "a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane." Mich. Comp. Laws § 600.5851(2).

*Bradley v. Macomb Cty.*, 370 F. Supp. 2d 607, 610–11 (E.D. Mich. 2005). Despite Plaintiff's involuntary placement in CMHP, Plaintiff fails to allege facts showing that he was so mentally deranged as to prevent him from comprehending his rights. In fact, Plaintiff contends that he was not mentally deranged at all, and should not have been placed in CMHP or medicated with Haldol. Therefore, the statute of limitations was not tolled by mental disability.

Nor do the allegations in the complaint show that the statute of limitations was tolled by a continuous violation of Plaintiff's rights.

> A "continuous violation" occurs, and will extend the limitations period, if the defendant engages in continuing wrongful conduct; injury to the plaintiff accrues continuously; and had the defendant at any time ceased its wrongful conduct, further injury would have been avoided. *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). When a continuing violation is identified, the court will "consider all relevant actions allegedly taken pursuant to the [defendant's] discriminatory policy or practice, including those that would otherwise be time barred." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999) (citation omitted). The doctrine applies most frequently in the context of Title VII cases, and is rarely extended to § 1983 actions. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

*Goldsmith v. Sharrett et al.*, 614 F. App'x 824, 827-28 (6th Cir. 2015).

---

does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

As noted above, Plaintiff claims that while he was confined at AMF, Defendant Lanala made a mental health services referral on June 14, 2016, which misrepresented important facts and decreased his Global Assessment of Functioning (GAF) score from 70 to 15. Based on reports by Defendants Lanala and Harju, Plaintiff was transferred to the Crisis Stabilization Unit at the Woodland Center Correctional Facility and was involuntarily admitted into CMHP and placed on Haldol. On September 28, 2017, just before Plaintiff's involuntary treatment order was set to expire, Plaintiff was transferred to URF, where he objected to his continuing treatment by CMHP. However, on October 11, 2017, Defendants Wilanowski, Masuga, Emami, Wood, Chapin, and Faha continued Plaintiff's treatment by CMHP over his objections.

It is clear from the allegations in Plaintiff's complaint that the alleged misrepresentation of facts by Defendants Lanala and Harju, which allegedly caused his involuntary treatment by CMHP, was a discrete act. Plaintiff's continuation on this status, especially after his transfer to URF, was a separate incident involving an entirely different set of Defendants. Therefore, the Court concludes that Plaintiff's claims against AMF Defendants Lanala and Harju regarding the initial placement in CMHP and the concurrent prescription for Haldol are barred by the statute of limitations.

### V.     Retaliation

Plaintiff repeatedly asserts that he was admitted into CMHP and forcibly medicated for "retaliatory reasons." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to

7

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As discussed above, Plaintiff's claims against Defendants Lanala and Harju are barred by the statute of limitations. With regard to the remaining Defendants, Plaintiff's assertion of retaliation is entirely conclusory. Plaintiff merely alleges that Defendants at URF determined that Plaintiff should continue to be treated by CMHP and given Haldol. Plaintiff fails to allege any facts showing that their treatment of him was motivated by anything other than a desire to adequately address his mental health needs.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that the URF Defendants retaliated against

him because he filed a complaint against officials at another prison more than a year earilier. Accordingly, his speculative allegation fails to state a claim.

## VI. Eighth and Fourteenth Amendments

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments when they diagnosed him with a psychotic disorder and medicated him with Haldol against his will. In *Vitek v. Jones*, 445 U.S. 480, 493 (1980), the United States Supreme Court held that a criminal conviction does not authorize the state to classify a prisoner as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections. The *Vitek* Court noted that the state had a strong interest in segregating and treating mentally ill patients, but that a prisoner's interest in not being arbitrarily classified as mentally ill and subjected to involuntary treatment was also strong. The Court concluded that the state must apply "appropriate procedural safeguards against error." *Id.* at 495.

In a subsequent case, the Supreme Court addressed the involuntary medication of a prisoner pursuant to the following policy:

> Policy 600.30 was developed in partial response to this Court's decision in *Vitek v. Jones,* 445 U.S. 480 (1980). The Policy has several substantive and procedural components. First, if a psychiatrist determines that an inmate should be treated with antipsychotic drugs but the inmate does not consent, the inmate may be subjected to involuntary treatment with the drugs only if he (1) suffers from a "mental disorder" and (2) is "gravely disabled" or poses a "likelihood of serious harm" to himself, others, or their property. Only a psychiatrist may order or approve the medication. Second, an inmate who refuses to take the medication voluntarily is entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the Center, none of whom may be, at the time of the hearing, involved in the inmate's treatment or diagnosis. If the committee determines by a majority vote that the inmate suffers from a mental disorder and is gravely disabled or dangerous, the inmate may be medicated against his will, provided the psychiatrist is in the majority.
>
> Third, the inmate has certain procedural rights before, during, and after the hearing. He must be given at least 24 hours' notice of the Center's intent to convene an involuntary medication hearing, during which time he may not be medicated. In addition, he must receive notice of the tentative diagnosis, the factual basis for the

9

> diagnosis, and why the staff believes medication is necessary. At the hearing, the inmate has the right to attend; to present evidence, including witnesses; to cross-examine staff witnesses; and to the assistance of a lay adviser who has not been involved in his case and who understands the psychiatric issues involved. Minutes of the hearing must be kept, and a copy provided to the inmate. The inmate has the right to appeal the committee's decision to the Superintendent of the Center within 24 hours, and the Superintendent must decide the appeal within 24 hours after its receipt. *See* App. to Pet. for Cert. B-3. The inmate may seek judicial review of a committee decision in state court by means of a personal restraint petition or extraordinary writ. *See* Wash. Rules App. Proc. 16.3 to 16.17; App. to Pet. for Cert. B-8.
>
> Fourth, after the initial hearing, involuntary medication can continue only with periodic review. When respondent first refused medication, a committee, again composed of a nontreating psychiatrist, a psychologist, and the Center's Associate Superintendent, was required to review an inmate's case after the first seven days of treatment. If the committee reapproved the treatment, the treating psychiatrist was required to review the case and prepare a report for the Department of Corrections medical director every 14 days while treatment continued.

*Washington v. Harper*, 494 U.S. 210, 215-16 (1990) (footnotes omitted).

Within the Michigan Department of Corrections, the procedure for the involuntary treatment of a prisoner with psychotropic medication is set forth in MDOC Policy Directive 04.06.183. This policy directive provides that a prisoner may be temporarily subjected to involuntary treatment with psychotropic medication where the following conditions are met: "a psychiatrist's certificate [is] executed which states [that] the prisoner is mentally ill"; the psychiatrist also concludes that the prisoner "is a present danger to himself or herself or to others"; "the prisoner refuses treatment"; and the psychiatrist orders "involuntary administration of psychotropic medication pending the convening of a Hearing Committee." *See* MDOC Policy Directive 04.06.183 ¶¶ Q-R.

The prisoner must be provided with a copy of the "Psychiatric Certificate, Psychiatric Report, QMHP (Qualified Mental Health Professional) Report, and a notice of hearing and rights to the prisoner and, if one has been appointed, to the guardian of the person" prior to the hearing committee being convened. MDOC Policy Directive 04.06.183 ¶ S. The prisoner

must be assigned a Mental Health Advisor and must not be medicated for twenty-four hours prior to the hearing. *Id.* at ¶ T. The hearing committee must consist of "a psychiatrist, a fully licensed psychologist, and another mental health professional whose licensure or registration requirements include a minimum of a baccalaureate degree from an accredited college or university, none of whom is, at the time of the hearing, involved in the prisoner's treatment or diagnosis." *Id.* at ¶ C. The hearing committee must consider "the QMHP Report alleging that the prisoner is mentally ill, the Psychiatric Report, the Psychiatrist's Certificate, proof that a notice of hearing has been served, proof that the prisoner has not been medicated within 24 hours and any other admissible evidence presented at the hearing." *Id.* at ¶ W. The prisoner has the right to attend the hearing, may bring along his or her guardian, and is entitled to the assistance of his or her mental health advisor. *Id.* at ¶ X. The prisoner may present evidence, including witnesses, and may cross-examine witnesses. *Id.* The hearing committee must then "determine whether the prisoner is mentally ill and, if so, whether the proposed mental health services are suitable to the prisoner's condition. A finding of mental illness must be confirmed by the psychiatrist on the Hearing Committee to be valid." *Id.* at ¶ Y. The committee must prepare an official record of the hearing, and must present to the prisoner a report of their findings and orders, along with an appeal form. *Id.* at ¶¶ Z-AA. The initial period of treatment may not exceed ninety days. *Id.* at ¶ AA. The prisoner may then appeal the hearing committee's decision to the Director of the Corrections Mental Health Program with the assistance of their mental health advisor; prisoner may then appeal that decision to the state circuit court. *Id.* at ¶ DD. The policy also provides for renewal of the medication order. *Id.* at ¶¶ EE-FF. The prisoner is also entitled to a copy of the corrections mental health program ("CMHP") guidebook which contains "rights information," and is to be offered an "opportunity to consult with staff from the Office of the Legislative Corrections Ombudsman." *Id.* at ¶ GG.

Because none of the members of the hearing committee may be involved in the inmate's current treatment or diagnosis, the MDOC policy provides for an independent decisionmaker. The policy also provides that the inmate has right to be present at the hearing and present evidence, and can appeal the decision to the Director of the CMHP and the circuit court. Therefore, it is clear that the MDOC policy passes rational basis scrutiny and satisfies procedural due process. *Harper*, 494 U.S. at 233-35.

Plaintiff's complaint is largely conclusory and he fails to allege facts showing that he was denied a hearing, was not allowed to be present at the hearing, or was not allowed to file an appeal. In *Harper*, the Court stated:

> Under Policy 600.30, the decisionmaker is asked to review a medical treatment decision made by a medical professional. That review requires two medical inquiries: first, whether the inmate suffers from a "mental disorder"; and second, whether, as a result of that disorder, he is dangerous to himself, others, or their property. Under the Policy, the hearing committee reviews on a regular basis the staff's choice of both the type and dosage of drug to be administered, and can order appropriate changes. 110 Wash.2d, at 875, 759 P.2d, at 360. The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that due process requires no more.

*Id*. at 232-33. Because Plaintiff does not allege that he was denied the protections afforded by MDOC policy, the Court will dismiss Plaintiff's due process claims.

Plaintiff also claims that his involuntary treatment with an antipsychotic medication violated the Eighth Amendment. In an unpublished opinion addressing such a claim, the Sixth Circuit has held that the Eighth Amendment was not violated by the involuntary administration of lithium to a mentally ill patient:

> There is a recognized Eighth Amendment protection for prisoners against "deliberate indifference" to a serious medical need, but that indifference generally involves the *failure* to provide medical care. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In cases like Kramer's, where the medical personnel are treating him and have made a decision about the precise course of action he requests, claims are

12

> generally unsuccessful. *E.g., Davis v. Agosto,* 89 F. App'x 523, 529 (6th Cir. 2004) (denying Eighth Amendment claim on summary judgment where defendant argued that the unwanted treatment of a head wound unnecessarily inflicted pain upon him).
>
> This is because *failing* to prevent medical harm only "rises to the level of a constitutional violation where both objective and subjective requirements are met." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). Where the prisoner was in the care of a doctor (and the allegation is deliberate indifference based on care given and not intentional infliction of pain), our cases offer two verbal formulations to describe when a doctor's actions were subjectively callous so as to be constitutionally cruel and unusual punishment. First, if the prisoner received "grossly inadequate care," we will conclude a doctor acted with "subjective" deliberate indifference. *Perez v. Oakland County,* 466 F.3d 416, 424 (6th Cir. 2006). Second, we have favorably cited the Eleventh Circuit's test: "whether a reasonable doctor . . . could have concluded his actions were lawful." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834, 844 (6th Cir. 2002) (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1034 (11th Cir. 1989)). While both approaches lack absolute analytic precision, it is clear that Kramer has not alleged facts that rise to the level of seriousness they convey. Kramer asserts only that he disagrees with the decision to keep him on lithium in the face of the risk of kidney failure and that outside doctors have not been permitted to review the decision made by the prison's medical professionals. This does demonstrate a possible disagreement over which health problem-the mental disorder or the risk of kidney problems-posed a more serious medical threat to Kramer. But it is far short of an allegation of "grossly inadequate care" or unlawful behavior. *Cf. Terrance,* 286 F.3d at 844-47 (holding that doctors and nurses could be found to have provided grossly inadequate care after they failed to supervise decedent or plan for risks associated with decedent's medical conditions despite their knowledge of immediate risk factors of sudden death). That is, even if he were to prove the disagreement at trial, he would not be entitled to relief because no alleged fact tends to show that the prison doctors provided "grossly inadequate care" or that their treatments were so medically unsound as to violate the law.

*Kramer v. Wilkinson*, 302 F. App'x 396, 400-01 (6th Cir. 2008).

As in *Kramer*, Plaintiff in this case has failed to allege facts which show that he received "grossly inadequate care." Although Plaintiff allegedly suffered from side-effects as a result of taking Haldol, Plaintiff was given Cogentin to address those side-effects. Plaintiff's allegations fail to demonstrate that Defendants acted with deliberate indifference. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

**VII.    Religious Exercise under the First Amendment and RLUIPA**

Plaintiff asserts that the involuntary administration of medication violated his rights under the First Amendment and RLUIPA because his Nuwaubia prohibits drug usage. The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Likewise, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

In order to establish a right to relief under the First Amendment and RLUIPA, Plaintiff must show that requiring him to take Haldol, or any medication, places a substantial

burden on a sincerely held religious belief. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312–13 (10th Cir. 2010). As noted above, Plaintiff alleges that "his way of life or lifestyle is Nuwaubian," and that he sometimes refers to his beliefs as a religion. (ECF No. 1, PageID.13.) Plaintiff then goes on to say that Nuwaubia incorporates ancient Egyptian concepts, belief in extraterrestrial life and a supreme being, Native American beliefs, and Islamic traditions. As almost an afterthought, Plaintiff makes a conclusory assertion that Nuwaubians may not use drugs. The Court notes that given the extreme brevity of Plaintiff's allegations on this issue, as well as the ambiguous nature of his statement regarding his belief in Nuwaubianism, it is not at all apparent that the need to remain drug free is actually a sincerely held religious belief on his part. Because Plaintiff has failed to allege that his sincerely held religious belief requires him to remain drug free, his First Amendment and RLUIPA claims are properly dismissed.

Moreover, as noted above, the MDOC provides extraordinary protections before allowing an inmate to be medicated without their consent. Although the Court makes no determination on this issue, it notes that given the showing required for involuntary medication of a prisoner, it is likely that Plaintiff's placement on Haldol constituted the least restrictive means of furthering a compelling governmental interest of protecting the safety of Plaintiff and those around him. *See* 42 U.S.C. § 2000cc-1(a).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that

15

any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  October 15, 2020              /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge